IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SEJ ENTERPRISES, | ) |
| | ) |
| Plaintiff and Counter-Defendant, | ) |
| | ) |
| v. | ) Civil Action No.: 1:12-cv-43 |
| | ) |
| CENTRA TECHNOLOGY, INC., | ) |
| | ) |
| Defendants and Counterclaimant. | ) |

## MEMORANDUM OPINION

Before the Court are the parties' cross Motions for Summary Judgment (Dkt. Nos. 43 and 45). For the reasons stated in open Court, in addition to those provided herein, the Court GRANTS summary judgment as to liability in Plaintiff's favor and DISMISSES Defendant's counterclaim. At the hearing on these Motions, the Court vacated the trial date. The parties may attempt to settle the remaining damages issue out of Court, or in the event the parties are unable to come to an agreement, a trial on this discrete issue will take place.

### I. Undisputed Facts[1]

The present cause of action is based in a contract dispute between Plaintiff, SEJ Enterprises ("SEJ"),[2] and Defendant/Counterclaimant, Centra Technology, Inc. ("Centra"). The

---

[1] The following undisputed facts are a compilation of the parties' supported and uncontroverted assertions within their cross Motions for summary judgment. *See* Local Civil Rule 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

[2] On February 21, 2011, SEJ changed its name from Socio-Cultural Intelligence Analysis, Inc.

1

underlying contract (the "Purchase Agreement")[3] involved the sale of SCIA, LLC ("SCIA") by SEJ and Earl Industries ("Earl," collectively "Sellers") to Centra on December 31, 2010.

Prior to selling SCIA to Centra, SEJ, Earl, and SCIA hired Enterprise Research Group, LLC ("ERG") to assist with SCIA's sale. The Sellers, SCIA, and ERG signed an agreement under which ERG would be compensated for closing a sales transaction relating to certain identified parties.[4] Centra was one of the identified parties. However, Sellers terminated the ERG agreement less than a month after signing it, due to ERG's alleged performance failures.

Approximately three months later, on December 31, 2010, the Sellers sold all of their rights in SCIA to Centra, and SCIA became Centra's wholly-owned subsidiary. Pursuant to the Purchase Agreement governing this sale, Centra executed a Non-Negotiable Promissory Note (the "Promissory Note" or "Note")[5] to SEJ, dated December 31, 2010, in the amount of $1 million. The Note had a one-year maturity date, set to expire on December 31, 2011.

On December 10, 2010, prior to the deal closing between Centra and the Sellers, ERG sent a letter to Earl asserting that it was entitled to an amount not less than $250,000. ERG claimed it was owed this amount as a transaction fee relating SCIA's sale to Centra. ERG followed up with additional requests asserting the same demand. In a February 17, 2011 letter, SEJ responded to ERG's request on behalf of itself and Earl. In that letter, SEJ stated that it was not obligated to pay any amounts to ERG because ERG initially breached the Agreement by failing to meet its obligations. SEJ offered to settle the ERG claim for $5,540—an amount

---

[3] The Purchase Agreement is attached to Plaintiff's Motion for Summary Judgment as Ex. 3, Dkt. No. 46-1, and to Defendant's Motion as Ex. D, Dkt. No. 44-4.

[4] Under the ERG Agreement, the Sellers would pay ERG $250,000 for closing a transaction with one of the identified parties, in addition to six percent of the transaction's value should the transaction be valued in excess of $8,000,000.

[5] The Promissory Note is attached to Plaintiff's Motion for Summary Judgment as Ex. 4, Dkt. No. 46-2, and to Defendant's Motion as Ex. E, Dkt. No. 44-5.

2

consisting of one month's retainer fees and online data room charges. On March 28, 2011, ERG sent a letter rejecting SEJ's offer to settle and requested that SEJ and Earl take the appropriate steps to preserve all documents relevant to the matter.

During a March 30, 2011 telephone conversation, both ERG and SEJ's counsel discussed ERG's claim. SEJ took the position that it was not obligated to pay the ERG claim because (i) ERG initially breached the Agreement and (ii) SEJ had the right to rescind the Agreement because ERG was not a licensed broker dealer.

After failing to collect from the Sellers, ERG contacted SCIA by letter (via Centra, SCIA's new parent company) and asserted the same claim. The letter also asked SCIA to preserve all documents relevant to the matter. This letter from ERG to SCIA, via Centra, triggered the indemnification provision in the Purchase Agreement between the Sellers and Centra. Specifically, Section 6.1 of the Purchase Agreement, titled "Indemnification Obligations of the Sellers" states:

> [T]he Sellers, jointly and severally, shall protect, defend, hold harmless and indemnify the Buyer, its subsidiaries (including the Company) . . . , against and in respect of any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever, (and any and all actions in respect thereof), including without limitation, reasonable professional fees and costs of investigation, litigation, settlement and judgment and interest (collectively, the "Losses"), that may be suffered or incurred by any of them arising from or by reason of any of the following:
>
> > (a) any breach of any covenant or agreement made by [Sellers] in this Agreement . . . ;
> >
> > . . .
> >
> > (h) any claim for brokerage or similar fees from any intermediary or other Transaction Expenses not deducted from the Purchase Price;
> >
> > . . .
> >
> > (k) any and all costs and expenses (including reasonable legal and accounting fees) incident to the enforcement of the provisions of this Section 6.1.

3

Section 6.3 of the Purchase Agreement outlines the steps a party must take to invoke its rights to indemnification. Pursuant to these procedures, Centra sent notice of its indemnification claim to SEJ. Upon receiving the notice, SEJ and Earl also had certain rights under the Purchase Agreement. Section 6.3(c) of the purchase agreement provides:

> If the Indemnifying Party [the Sellers] notifies the Indemnified Party [Centra] within the Election Period that the Indemnifying Party does not dispute its potential liability to the Indemnified Party under this Agreement and that the Indemnifying Party elects to assume the defense of the Third Party Claim, then the Indemnifying Party shall have the right to defend, at its sole cost and expense, such Third Party Claim by all appropriate proceedings, which proceedings shall be prosecuted diligently by the Indemnifying Party to a final conclusion or settled at the direction of the Indemnifying Party in accordance with Section 6.3. The Indemnifying Party shall have control of such defense and proceedings including any compromise or settlement thereof; provided, however, that any such compromise or settlement, shall be subject to the consent of the Indemnified Party which shall not be unreasonably withheld, conditioned or delayed.

SEJ timely notified Centra by letter that the Sellers did not dispute their liability to Centra with respect to ERG's claim, and that the Sellers desired, at their sole cost and expense, to defend SCIA and Centra against the ERG claim. Although the Sellers exercised their right to defend under Section 6.3(c) of the Purchase Agreement, Section 6.3(d) provides an exception to this right. It states that "if the Indemnifying Party [the Sellers] elects to defend the Indemnified Party [Centra] pursuant to Section 6.3 but fails to diligently and promptly prosecute or settle [the ERG claim], then [Centra] shall have the right to defend, at the sole cost and expense of [the Sellers] . . . [the ERG claim]."

Understanding its obligations to defend Centra and SCIA against the ERG claim, SEJ's counsel continued to express to ERG's counsel that the Sellers would not settle for more than $5,540. In response, ERG's counsel indicated that it would "proceed with litigation." Although communications to this effect were ongoing and repetitive in nature, ERG never filed suit.

4

On September 28, 2011, Centra expressed concern to SEJ regarding the continuing "stand-off" between Sellers and ERG. SEJ informed Centra that it did not intend to settle the claim by paying ERG the success fee, that SEJ had a basis for disclaiming liability, and that SEJ had offered to settle the matter by paying the retainer and reasonable expenses only. SEJ also noted that it would "vigorously defend any claims that ERG may bring in this matter." On October 4, 2011, Centra's counsel recommended to SEJ that SEJ either resolve the ERG claim, or sue ERG for declaratory judgment. SEJ responded by acknowledging Centra's recommendation, but indicated that any declaratory judgment action was within SEJ's discretion. SEJ reiterated that "[i]f ERG files a lawsuit, we will defend it appropriately." SEJ also reminded Centra that should Centra suffer any actual loss, it was protected by its indemnification rights against the Sellers. SEJ further stated that if there was an actual loss prior to the time that Centra was required to pay SEJ the $1 million balance on the Note, Centra had a right to setoff. However, if ERG's claim was merely an assertion, and not an actual loss at the time SEJ's Note became due, Centra would be required to pay the Note without offset. In fact, SEJ informed Centra that withholding payment for the ERG claim would be a breach of the Note and the Purchase Agreement. Although SEJ's counsel empathized with Centra, noting that Centra likely wished it had more security in the situation, SEJ also reminded Centra that withholding potential but not actual losses was not what the parties had agreed.

In an October 12, 2011 letter, SEJ informed ERG that the Sellers had assumed responsibility for defending Centra against ERG's claims. Although communication between SEJ and ERG continued, SEJ refused to offer more than $5,540 to settle the claim, and ERG continued to threaten litigation.

On December 13, 2011, SEJ's counsel contacted Centra's counsel and instructed that the $1 million balance on the Promissory Note be made on December 30, 2011, because December 31 was a Saturday. Centra responded by inquiring as to the status of the ERG claim. SEJ indicated that it had been almost a month since hearing from ERG, and that nothing had changed from the initial correspondence. As of December 30, 2011, the ERG dispute remained unresolved.

Although the Note required that Centra pay $1 million to SEJ on December 31, 2011, it also permits offsets against that amount in certain circumstances. Specifically, the Note provides:

> Except as specifically set forth in Section 6.5 of that certain Member Interest Purchase Agreement, dated as of the date hereof, by and among Maker [Centra], SCIA, LLC, the initial Noteholder [SEJ] and Earl Industries, L.L.C., the Maker shall have no right to withhold and/or offset any amounts due hereunder.

Section 6.5 of the Purchase Agreement contains the following right to setoff:

> The Buyer, in its sole discretion, shall have the right to offset against any amounts owed by it to the Sellers under Section 6.1, or otherwise under this Agreement or any of the Transaction Documents; provided, however, that such offsets shall be deducted at the rate of 51% from payments due to Socio [SEJ] and 49% from the payments due to Earl, solely to the extent that any such payments are otherwise due and payable to Socio [SEJ] and Earl hereunder and the amount of the offset can be fully satisfied from such payments.

And again, the amounts owed under Section 6.1 of the Purchase Agreement include:

> any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever, (and any and all actions in respect thereof), including without limitation, reasonable professional fees and costs of investigation, litigation, settlement and judgment and interest (collectively, the "Losses"), that may be suffered or incurred . . .

Based on these provisions, Centra believed that it was entitled to offset the $1 million by $350,000, which Centra calculated to represent a potential loss relating to (i) the unresolved ERG claim and (ii) any associated reasonable legal expenses. On December 30, 2011, SEJ gave Centra notice of late payment as required by the Note, and on January 12, 2012, SEJ filed the present

6

cause of action, demanding payment from Centra of the $350,000 deficiency on the Note plus late fees and attorneys' fees.[6] On February 6, 2012, Centra filed: (i) a counterclaim alleging SEJ breached the Purchase Agreement by failing to properly fulfill its defense obligations against the ERG claim; (ii) a claim for interpleader of the offset funds; and (iii) a third-party complaint against ERG for declaratory judgment. As an alternative claim for declaratory judgment, Centra asserted that the ERG Agreement was *void ab initio* because, in part, ERG was not a registered broker-dealer.

After Centra filed its claims, the Sellers engaged in settlement discussions with ERG, ultimately paying ERG $150,000 in exchange for full release of any and all claims ERG might have against SEJ, Earl, SCIA, or Centra. Centra approved the settlement and relinquished $273,500 of the $350,000 withheld to SEJ on March 7, 2012. As a result of the ERG settlement, the parties filed a stipulation of partial dismissal, dismissing Centra's third party complaint against ERG as well as Centra's count for Interpleader against the Sellers. Centra claims that it continues to hold $76,500 of the original $1 million face value of the Note for legal fees associated with this matter for which SEJ is required to indemnify Centra. The Sellers counter that they are not required to pay these fees, and on March 5, 2012, they amended their complaint to allege that Centra breached the Purchase Agreement by interfering with SEJ's right to control the defense of the ERG Claim.

The only counts that remain are SEJ's claims against Centra for breach of the Purchase Agreement and Promissory Note and Centra's counterclaim against SEJ for breach of the Purchase Agreement. Centra argues that SEJ failed to "diligently and promptly prosecute or settle [the ERG claim]," and that as a result, Section 6.3(d) of the Purchase Agreement makes the

---

[6] The Note contains the following provision: "The Maker agrees to pay (i) a late fee of five percent (5%) on any payment that is not made within ten days after written notice that such payment is due and (ii) all costs of collection, including reasonable attorneys' fees."

Sellers responsible for the attorneys' fees and costs Centra incurred in defending against the ERG claim. SEJ seeks to recover the remaining $76,500 due under the Note, the attorneys' fees and costs in recovering the outstanding Note balance, plus the late fees provided for under the note on the original $350,000 withheld. SEJ also seeks to recover they attorneys' fees and costs it incurred in responding to Centra's third party complaint for declaratory judgment and the value it paid to ERG to settle the claim.

## II. Analysis

### a. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party. . . ." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson*, 477 U.S. at 255). Summary Judgment is appropriate when facts are fully undisputed and fully developed, and any additional facts that might be presented "could in no way affect the conclusion to be drawn from the admitted facts." *McComb v. S. Weighing & Inspection Bureau*, 170 F.2d 526, 530 (4th Cir. 1948).

### b. Centra breached the Promissory Note.

SEJ argues that Centra inappropriately withheld amounts due under the Promissory Note and thus breached the Note. Centra counters that the Note's provisions entitled Centra to withhold the value of the potential ERG claim and any related fees associated with that claim.

The decisive provision of the Note states:

> Except as specifically set forth in Section 6.5 of that certain Member Interest Purchase Agreement, . . . [Centra] shall have no right to withhold, and/or offset any amounts due hereunder.

Section 6.5 of the Purchase Agreement, as referenced in the Note, provides:

> The Buyer, in its sole discretion, shall have the right to offset . . . any *amounts owed* by the Sellers under Section 6.1. . . .

(Emphasis added). Section 6.1 of the Purchase Agreement provides:

> *[F]rom and after the Closing*, the Sellers . . . shall protect, defend, hold harmless and indemnify the Buyer [and] its subsidiaries . . . against . . . any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever (and any and all actions in respect thereof, including without limitation, reasonable professional fees and costs of investigation, litigation, settlement and judgment and interest (collectively, the "Losses") *that may be suffered or incurred* by any of them arising from or by reason of any of the following:
>
> . . .
>
> (h) any claim for a brokerage or similar fee from any intermediary or other Transaction Expense not deducted from the Purchase Price.

(Emphasis added).

A contract is intended to be read as a whole; "meaning must be given to every clause, if possible, in order for the court to ascertain the unitary agreement of the parties." *State Farm Fire and Cas. Co. v. Nationwide Mut. Ins. Co.*, 596 F. Supp. 2d 940, 945 (E.D. Va. 2009). Transposing these sections[7] into a holistic assimilation of the relevant portions, the Court is left with the following guiding provision:

> [Centra] shall have no right to withhold, and/or offset any amounts due hereunder, [e]xcept any amounts owed by the Sellers . . . , from and after the Closing, . . . [including] "Losses" that may be suffered or incurred . . . arising from . . . any claim for a brokerage or similar fee . . . not deducted from the Purchase Price ([which] Buyer, in its sole discretion, shall have the right to offset against), . . . .

---

[7] That is, the relevant portion of the Promissory Note as well as Sections 6.1 and 6.5 of the Purchase Agreement.

9

SEJ argues that the phrase "may be suffered" includes actual losses that materialize after the execution of the Promissory Note and before the Note's maturity date. In other words, SEJ takes the position that Centra's right to offset is not triggered unless a loss is *actual*, rather than only a *potential*, at the date of maturity. Centra argues that the phrase "may be suffered" includes all actual or potential future losses, even if the potential losses have not definitively materialized on the maturity date. Thus, Centra believes that it should have been permitted to offset the balance due under the Note by any outstanding contingent future claims that existed at the date of the Note's maturity.

Centra's position is untenable for a variety of reasons. First, Section 6.1 of the Purchase Agreement specifically defines the types of losses that the Buyer has the right to offset. This list includes, *inter alia*, losses, damages, and litigation fees. Notably absent from the list are *potential* losses, *foreseeable* damages, or *anticipated* litigation fees.

Second, although the phrase "may be suffered or incurred" is future oriented, read in context, the future orientation relates to the time period following the execution of the Purchase Agreement. It does not relate to the mere possibility or contingency of some loss at any point in the future. The phrase "may be suffered or incurred" must be read in conjunction with the lead-in to Section 6.1 which reads "from and after the Closing." Thus, the losses that "may be . . . incurred" would be considered a future event using the closing date as a point of reference. This phrase does not contemplate, as Centra suggests, that "Centra should be permitted to offset contingent, but not actual, losses. As SEJ points out, the use of "may" in Section 6.1 "is purely temporal—after a point in time—as opposed to the sense of 'may' that is metaphysical—the possibility that something might exist sometime in the future." *See* Pl.'s Resp. to Def.'s Mot. Summ. J. 8, Dkt. No. 59.

Moreover, Section 6.1 permits offset only for losses that may be "suffer*ed* or incurr*ed*." These terms are in the past tense—indicating events that have already taken place. Considering this section holistically, rather than piecemeal, this provision clearly refers to events that may take place after the promissory note is executed but that have occurred by the time setoff is permitted. That this is the correct reading of this provision is only highlighted by considering other possible language the parties could have used. For example, the Purchase Agreement could have permitted offset as to any amounts that the buyer "may potentially suffer or incur." But, it did not.

Finally, Section 6.5 of the Purchase Agreement only permits the Buyer to deduct "amounts *owed*" under the Indemnification Obligations Provision (Section 6.1). In general, an indemnifying party has no obligation to indemnify unless and until the indemnitee incurs an expense covered by the indemnification agreement. *See* Blacks Law Dictionary (defining indemnification as "[t]he action of compensating for loss or damage *sustained*" (emphasis added)). Thus, Centra did not have a right to offset unless SEJ actually owed an amount to Centra under the indemnification provision. It is undisputed that at the Note's maturity date, no such obligation existed.

Reading the words of the Purchase Agreement cohesively, and as intending their plain meaning, *see Riggs Nat. Bank of Washington, D.C. v. Linch*, 36 F.3d 370, 374 (4th Cir. 1994), the Court finds that SEJ's interpretation is correct, and summary judgment in SEJ's favor is warranted as to Count 1 of its Complaint. SEJ is entitled to the remaining amount due under the Promissory Note ($76,500), plus five percent interest on the original $350,000 withheld, plus "all costs of collection, including reasonable attorneys' fees" as provided for in the Note.

### c. SEJ diligently and promptly prosecuted the ERG claim and Centra breached the Purchase Agreement by taking control of the ERG claim defense proceedings.

In Count II of SEJ's amended complaint, SEJ alleges that Centra breached the Purchase Agreement when it filed the third-party complaint against ERG. Based on Section 6.3(c), SEJ argues that it had the sole discretion to defend against the ERG claim. Centra counters that SEJ forfeited its defense rights under Section 6.3(c) when it breached the Purchase Agreement by failing to "diligently and promptly prosecute or settle" the ERG claim. As a result, Centra argues that it had a right to defend the ERG claim at SEJ's expense, as provided in Section 6.3(d).

The parties do not dispute SEJ's efforts; rather, the dispute is to the sufficiency of those efforts, and whether SEJ's actions constituted diligent and prompt prosecution. The Court finds that they did.

From the date ERG initially asserted its claim, through the date on which Centra's payment became due under the Promissory Note, Centra suffered no losses related to the ERG claim. Albeit at an unaltering and di minimus amount, SEJ repeatedly offered to settle the ERG claim for what SEJ believed to be fair compensation for ERG's services. In response to ERG's multiple demands, SEJ denied liability time and time again, and raised intended legal defenses both orally and in writing. ERG, as the aggrieved party, never filed suit to enforce its allegations. Though settling the ERG matter prior to the Promissory Note's maturity date would undoubtedly have provided Centra with more security, Centra can point to no authority or contractual language that mandated such an outcome. Section 6.3(c) placed upon SEJ the obligation to diligently prosecute the ERG claim; however, this provision also left the strategy of fulfilling that obligation within SEJ's discretion.

SEJ was not required to protect Centra against any and all uncertainty. SEJ repeatedly responded to ERG's allegations, and SEJ informed Centra of its position. These are not the actions of one who is careless or unresponsive. Accordingly, the Court finds that SEJ diligently and promptly prosecuted the ERG claim. Centra breached the Purchase Agreement by filing the third party claim in the present cause of action, after having tendered notice to SEJ seeking indemnification. Summary Judgment as to Count II of SEJ's amended complaint is GRANTED in SEJ's favor, and Centra's counterclaim is DISMISSED.

Only the issue of damages remains. If the parties are unable to reach an agreement, the Court will hold a trial as to this discrete issue.

### III. Conclusion

For the reasons stated within this Opinion and those provided in open Court, summary judgment as to liability on Counts I and II of the Amended Complaint is entered in favor of SEJ, and the Counterclaim is DISMISSED with prejudice. The amount of damages owed is reserved for settlement or trial.

An appropriate Order shall issue.

August 10, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge